**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HAMLIN TEC, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | No. 23-cv-03415<br><br>The Honorable Sara L. Ellis<br><br>Magistrate Judge Heather K. McShain |

**PLAINTIFF'S RESPONSE MEMORANDUM OPPOSING SUMMARY JUDGMENT**

**INTRODUCTION**

The issues in this case are governed by Section 5/4A of the Illinois Uniform Commercial Code. 810 ILCS 5/4A-101 *et seq*. These rules provide objective standards to determine which party bears a loss without needing to prove fault or duty and breach. According to the Comment to Section 4A-102, Section 4A was a deliberate decision to establish precise rules on a clean slate to assign responsibility, define norms, allocate risks, set liability limits, and address the parties' need to predict and insure against risk with certainty and adjust operational procedures.

> The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.

810 ILCS 5/4A-102, cmt.

**DISPUTED FACTS HAMLIN CONTENDS DEFEAT SUMMARY JUDGMENT[1]**

1. Hamlin's payment order to Chase on January 20, 2022 named Union Electronic Distributors or UED NEW as beneficiary. (Resp. Ex 4, Munteanu Decl., ¶ 7, Ex. A-Hamlin

[1] Presented in response pursuant to the Court's standing order on summary judgment practice.

Payment Order (Plf's Ex 1 to Hamlin Dep); Mot. Ex F, Hamlin Dep, 51:2-55:7).

2. Hamlin's payment order to Chase identified account -7502 as the beneficiary's account number at Truist Bank. (Resp. Ex. 4, Munteanu Decl., ¶ 7, Ex. A-Hamlin Payment Order).

3. The payment order Chase entered in the Automated Clearing House ("ACH") system for Hamlin's funds transfer omitted Union Electronic Distributors or UED NEW as beneficiary. (SOF ¶¶ 48-53; Resp. Ex 1, under seal at Dkt. 41, Payment Orders Spreadsheet, IDs 5319215594, 5319418020; Resp. Ex 5, Pollack Decl. ¶¶ 2-9, Ex. A-Plf's R.34 Req, ¶ 6., Ex. B-Def's R34 Resp. ¶ 6, Ex C-Meet/Confer Emails, Ex D-Plf's R. 30(b)(6) notice to Chase, ¶¶ 2 and 10, Ex E-Meet/confer Emails; Mot. Ex I, under seal at Dkt. 34, Ex B-Chase Dep. at 13:23-22:16).

4. The payment order Chase entered in the ACH system for Hamlin's funds transfer identifies Hamlin as payee. (Resp. Ex 1, under seal at Dkt. 41, IDs 5319215594, 5319418020).

5. Hamlin's funds transfer was not completed by acceptance by Truist Bank into the account for the benefit of Union Electronic Distributors or UED NEW. (SOF ¶¶ 46-7; Resp. Ex 3, Walski Aff. at ¶¶ 3-8; Resp. Ex 4, Munteanu Decl., Ex. A-Hamlin Payment Order; Mot. Ex F, Hamlin Dep. at 46:10-47:7; Mot. Ex H, Singh Decl. ¶ 6).

6. Hamlin was organized as a corporation on October 3, 2019, and Bogdan Munteanu became its sole owner in December, 2020. (Resp. Ex 1, Munteanu Decl. at ¶¶ 2-3).

7. Chase did not provide Hamlin a Deposit Account Agreement or other applicable account agreement when opening the Chase Total Business Checking Account ending in -3593 on October 24, 2019 or thereafter. (SOF ¶¶ 54-7; Resp. Ex 4, Munteanu Decl. at ¶ 6; Mot. Ex F, Hamlin Dep. 43:2-45:14, 55:12-56:9; Mot. Ex. I, under seal at Dkt. 34, Ex B-Chase Dep. 72:13-74:5; Mot. Ex J, Chase Dep. Ex. 7 at Dkt 34, Ex C-Summary of Account Agreements).

8. The Chase Signature Card Munteanu signed on October 24, 2019 does not establish Hamlin

received any account agreement because Munteanu understood it as only a signature card for Chase to verify against future signatures and so did not review its text, and he was not given an account agreement. (Resp. Ex 4, Munteanu Decl. at ¶ 4; Mot. Ex. F, Hamlin Dep, 39:11-41:7, 55:8-56:9; Mot. Ex I, under seal at Dkt 34, Ex B, Chase Dep, 72:13-74:5, 81:15-20).

9. Chase did not provide Munteanu a copy of the signature card after it was signed. (Resp. Ex 4, Munteanu Decl. at ¶ 4).

10. None of the notices stated in SOF ¶ 31 from Deposit Account Agreements apply to Hamlin's funds transfer from its business account because the following language is included under the same Part III, and Chase asserts its separate Vendor Payment Service Agreement applies:

> **11. Services not covered by this part; separate agreements**
>
> For personal accounts, EFT services described in the Electronic Funds Transfer Service Terms do not include wire transfers and any transactions that are not covered by Consumer Financial Protection Bureau Regulation E.
>
> For business accounts, wire transfers and other services not specifically described in the Electronic Funds Transfer Service Terms are governed generally by the Deposit Account Agreement or by separate agreements.
>
> We may offer additional EFT services besides those described in the Electronic Funds Transfer Service Terms that have separate agreements and disclosures.

(SOF ¶¶ 35-38; Mot. Ex. C, Williams Decl. at Ex. B, App'x C031, C041-2; Ex C, App'x C057-8, C068-9; Ex D, App'x C084-5, C095-6; Ex E, App'x C111-2, C122-3; Ex F, App'x C138-9, C150-1; Ex G, App'x C166-7, C178-9; Ex. H, App'x C194-5, C206-7; Ex I, App'x C222-3, C234-5; Ex J, App'x C250-1, C262-3; Ex K, App'x C278-9, C290-1; Ex L, App'x C306-7, C318-9).

11. Hamlin did not have notice, prior to acceptance of the payment order, that "payment of a payment order issued by the originator might be made by the beneficiary's bank on the basis of an identifying or bank account number even if it identifies a person different from the named beneficiary." (SOF ¶ 38).

## LEGAL STANDARD

Summary judgment may be granted when the facts show "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P 56(c); *Anderson v. Liberty Lobby, Inc*., 477 I.S. 242, 256 (1986). The Court must construe facts in a light most favorable to the non-movant, resolve any ambiguities and draw reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. The Court must not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Stokes v. Bd. Of Educ. Of the City of Chicag*o, 599 F.3d 617, 619 (7th Cir. 2010).

Where a provision of Section 4A of the UCC addresses an issue, it provides the "exclusive means of determining the rights, duties and liabilities of the affected parties" *Approved Mortgage Corp*. 106 F.4th 582, 592-3 (7th Cir. 2024). "The right of the sender of a payment order to be excused from the obligation to pay the order as stated in subsection (c) or to receive refund under subsection (d) may not be varied by agreement." 810 ILCS 5/4A-402(f). Courts should rely on decisions from other jurisdictions interpreting the same provision to promote the UCC's objective of uniformity. *Id*. at 588.

## ARGUMENT

### I. SUMMARY JUDGMENT IS NOT APPROPRIATE UNDER COUNT I IF CHASE'S PAYMENT ORDER DID NOT INCLUDE THE BENEFICIARY

Several disputed facts will determine which of Plaintiff's alternate counts applies. Section 4A-303(c) will apply if Chase did not execute Hamlin's payment order correctly.

> (c) If a receiving bank executes the payment order of the sender by issuing a payment order to a beneficiary different from the beneficiary of the sender's order and the funds transfer is completed on the basis of that error, the sender of the payment order that was erroneously executed and all previous senders in the funds transfer are not obliged to pay the payment orders they issued. The issuer of the erroneous order is entitled to recover from the beneficiary of the order the payment received to the extent allowed by the law governing mistake and restitution.

810 ILCS 5/4A-303(c). Chase is the receiving bank and Hamlin is the sender of the payment order. 810 ILCS 5/4A-103(a)(4), (5). Hamlin contends that Chase erroneously executed its payment order by omitting the beneficiary's name in Hamlin's payment order. (SODF ¶¶ 1-5)[2]. If omitted, Truist only had the account number to identify the beneficiary's account. While Section 4A-207(b) states Truist has no duty to verify if the beneficiary and account number accounts match, it does not prevent checking if the beneficiary is an existent or identifiable person holding an account. Chase's omission prevented it.

Chase argues it followed Hamlin's payment order by directing the transfer to the specified account number at Truist, but this conflates the beneficiary with the account number. A beneficiary is defined as a person, not an account number. 810 ILCS 5/4A-103(a)(2). A funds transfer is a series of payment orders to pay the beneficiary of the originator's [Hamlin] payment order, and is completed by acceptance of the "payment order for the benefit of the beneficiary of the originator's payment order." 810 ILCS 5/4A-104(a). Chase cites a single case, but that error in execution was by beneficiary's bank, not the sender's bank, as here. *United States AG v. PNC Bank*, Civ. No. 07-417, 2009 U.S. Dist. LEXIS 153155, at * 11(E.D. Pa. Mar 31, 2009).

Chase claims there is "not an iota of evidence in the record" showing it "executed Plaintiff's payment order by issuing a payment order to a beneficiary different from the beneficiary of the sender's order". Mot. Pg. 6. This again conflates the account number as the beneficiary. There is ample evidence that Chase omitted from its payment order the beneficiary in Hamlin's payment order. (SODF ¶¶ 1-3; SOF ¶¶ 48-53). Hamlin acknowledges other information might suggest Chase included the beneficiary in its payment order, but its disputed nature does clarify the fact on summary judgment. Truist's VP, Singh, states: "The name of the beneficiary of the funds transfer

[2] Statement of Disputed Fact, Resp. pgs. 2-4, is abbreviated SODF. Joint Statement is SOF.

is listed as "Union Electronic Distr". (Mot. Ex H, ¶ 5.a.). While this might imply inclusion in Chase's payment order, Singh also notes, "This funds transfer and the information contained herein is reflected in documents Bates Numbers 0000002-000006." (*Id.*) The uncertainty is because 1) Singh refers to the funds transfer beneficiary, not Chase's payment order, and 2) the only mention in those documents is a comment three weeks after the transfer:

> BUSINESS LICENSE OR SECRETARY OF STATE PAPERS NEEDED SHOWING JAMES WALSKI IS THE OWNER OF UNION ELECTRONIC ON DISTR ALONG WITH DRIVER'S LICENSE & SSC. A NOTARIZED LETTER ON LETTERHEAD NEEDED FROM HAMLIN TEC INC STATING THAT THE ACH MADE ON 01/21/2022 FOR $133,106.78 IS A GOOD ACH TO UNION ELECTRONIC DISTR.

(Resp. Ex. 2, at 000005, under seal at Dkt. 42). Truist's comment was on March 14, 2022, during its investigation of its customer who set up the "Mule Account." (*Id.* at 000006). The account owner was nominally James Walski, as President of the true Classicplan Premium Financing in California, although it was fraudulently set up in its name. (Resp. Ex 3, Walski Aff., ¶¶ 2-8). It remains disputed whether Chase's payment order omitted Hamlin's beneficiary. Section 4A-303(c) should apply if it did, and subsection 207(a) if it did not.

Chase insists it may present evidence contrary to its deposition statements. Chase argued in the joint motion to determine what facts are undisputed that its corporate deponent's "I don't know" responses were not binding judicial admissions, and Hamlin agreed. (Dkt. 32, ¶¶ B.1, 2). However, the facts as they stand remain disputed regarding whether Chase erroneously executed Hamlin's payment order by omitting the named beneficiary. (SOF ¶ 53). Hamlin specifically sought from Chase the information from its payment order, and all Chase produced was a single spreadsheet which omits the beneficiary's name. (SODF ¶ 3; SOF ¶¶ 48-53). Until resolved, the Court cannot determine if Chase's payment order was improperly executed under Count I and Section 4A-303(c), or if Count II and Section 4A-207(a) apply for misdescription where the beneficiary's name

identifies a nonexistent or unidentifiable person. Chase's refusal to concede that its payment order omitted the beneficiary's name from Hamlin's payment order highlights its materiality and undermines its argument for summary judgment.

Chase's second argument treats Section 4A-402 as an independent cause of action. Mot. Pg. 7. However, Hamlin has never claimed Section 4A-402 imposes any obligation on Chase beyond a refund. Section 4A-402 "describes how the failure to complete a funds transfer through acceptance by the beneficiary's bank affects the payment obligations of the various parties to the transfer." *Approved Mortgage Corp.*, 106 F.4th at 589. Therefore, if either Section 4A-303(c) or 4A-207 applies, then it is Section 4A-402(d) that allows Hamlin to obtain a refund from Chase.

Chase's reliance on account agreements in this context improperly attempts to override the Illinois UCC's exclusive remedies. Section 4A-402(f) states Hamlin's right to a refund cannot be varied by agreement. The relevance of account agreements is only to Count III, addressing whether Hamlin had statutory notice for Chase to avoid liability under subsections 207(b), (c)(2).

Summary judgment is inappropriate due to the dispute over whether Chase omitted from its payment order the beneficiary in Hamlin's payment order.

## II. SUMMARY JUDGMENT IS NOT APPROPRIATE UNDER COUNT II IF CHASE'S PAYMENT ORDER REFERRED TO A NONEXISTENT PERSON AT TRUIST BANK

Summary judgment is similarly inappropriate as Count I, and also because Chase is not entitled to judgment as a matter of law in any factual scenario. Count II asserts 810 ILCS 5/4A-207(a):

> Misdescription of beneficiary. (a) Subject to subsection (b), if, in a payment order received by the beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur.

### A. Disputed Factual Matters Prevent Summary Judgment

As in Section I, whether Chase omitted the beneficiary named in Hamlin's payment order

prevents the Court from deciding if Count I or II applies. Specifically, whether Chase erroneously executed its payment order under subsection 4A-303(c) by omitting the name, or, if included, if Section 4A-207(a) prevents acceptance if the name referred to a nonexistent or unidentifiable person holding an account with Truist.

**B. Whether Hamlin seeks a remedy against the wrong party**

Chase argues that Hamlin's claims under Section 4A-207(a) and (b) are misdirected because "all the stated duties in this section apply to the beneficiary's bank – not Chase..." Mot. Pg. 9. This should be rejected. Rather than duties, subsection 207(a) regards when a payment order cannot be accepted and no person has rights as beneficiary. Section 4A-402 regards unwinding payment obligations sequentially through privity between parties. *Approved Mortgage Corp*., at 591-2:

> The moneyback guarantee is triggered by the failure to complete a funds transfer. The identity of the party at fault for that failure is not relevant to the remedial scheme. The orderly unraveling does impose a burden on "innocent" banks. A receiving bank must refund its sender, even if it will not receive a refund from its receiving bank. See UCC § 4A-402, cmt. 2. The imposition of this burden was a conscious choice of Article 4A's drafters.
>
> ***
>
> "To allow a party to, in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities," and "create a risk of multiple or inconsistent liabilities." (*citing Grain Traders Inc. v Citibank, N.A.*, 160 F.3d 97, 102 (2nd Cir. 1998)).

If Hamlin was not obligated to pay its order, it properly seeks refund from Chase.

**C. Whether "or" in Subsection 4A-207(a) is Disjunctive and applies to the Parts of the Payment Order, or Conjunctive and applies to the Payment Order as a Whole**

Chase contends it is not liable "because the undisputed evidence establishes that the **payment order** did not refer to a `nonexistent or unidentifiable person[] or account[].'" Mot. Pg. 9. (emph. added). This suggests subsection 207(a) applies only where the entire payment order fails to refer to an existent or identifiable person or account. However, subsection 207(a) addresses the individual components of the payment order, such as the name, bank account number, **or** other

identification. Chase treats these identifiers conjunctively, implying that if any part identifies an existent or identifiable person or account, the order may be accepted. The use of "or" rather than "and" suggests otherwise, indicating that the identifiers as a whole do not have to refer to a nonexistent or unidentifiable person or account to prevent acceptance of the payment order. Chase cites no case supporting a conjunctive reading of subsection 207(a).

The court in *Corfan* rejected a conjunctive interpretation, finding the statutory language clear and a disjunctive reading appropriate. *Corfan Banco Asuncion Paraguay v. Ocean Bank*, 715 So.2d 967, 969 (Fla. App. Ct. 1998). In a disjunctive reading, the use of "or" suggests that if any of the conditions are met (i.e. the name, bank account number, or other identification refers to a nonexistent or unidentifiable person or account), then no one has rights as a beneficiary, and the order cannot be accepted. The *Corfan* court explicitly rejected using legislative intent from UCC comments to give "or" a conjunctive effect, as Chase attempts here. *Id*. A court using legislative intent to override the statute's plain language infringes on legislative authority. *Id*. at 970.

It is undisputed that Union Electronic Distributors, without regard to abbreviation, referred to a nonexistent and unidentifiable person holding an account at Truist. (SOF ¶ 47). If Chase included "Union Electronic Distr" in its payment order, then Section 4A-207(a) prevented its acceptance.

**D. Whether Notice in Section 4A-207(c)(2) Applies to a Subsection 207(a) Claim**

Chase argues that summary judgment is appropriate under either Section 4A-207(a) or (b) because it gave Hamlin notice as described in subsection 207(c)(2). There are two main issues with this argument. First, subsection 207(c) only applies if subsection 207(b) is relevant:

> If (i) a payment order described in subsection (b) is accepted, (ii) the originator' payment order described the beneficiary inconsistently by name and number, and (iii) the beneficiary's bank pays the person identified by number as permitted by subsection (b)(1), the following rules apply: ...

810 ILCS 5/4A-207(c). Subsections 207(a) and (b) present different types of misdescriptions.

Subsection 207(a) involves identifiers in a payment order referring to a nonexistent or unidentifiable person or account with Truist, resulting in an order which cannot be accepted. Subsection 207(b) applies when both the beneficiary and account number refer to an existent and identifiable person and account, with Truist, but they are different and the order is accepted. Notice described in 207(c)(2), by its terms, only applies to payment orders with a 207(b)-type mismatch.

The second issue is that applying an agreement to a payment order under subsection 207(a) improperly alters Hamlin's right to a refund under subsections 402(c) and (d). Section 4A-402(a) states: "This Section is subject to Sections 4A-205 and 4A-207. Section 4A-402(c) states in part: "This subsection is subject to ... Section 4A-303." Because Section 4A-402 is subject to Sections 4A-207 and 4A-303, the terms in Chase's account agreements cannot alter Hamlin's right under Section 4A-402(d) to refund for its payment order under either Section 4A-303(c) or 4A-207(a).

> The right of the sender of a payment order to be excused from the obligation to pay the order as stated in subsection (c) or to receive refund under subsection (d) may not be varied by agreement.

810 ILCS 5/4A-402(f). Therefore, whether Hamlin had the notice stated in Section 4A-207(c)(2) is only relevant if this case falls within Count III and Section 4A-207(b).

### E. Application of Section 4A-209(c)

Section 4A-209 addresses when acceptance of a payment order occurs. 810 ILCS 5/4A-209(c) reiterates what is stated in subsection 207(a), "...Acceptance does not occur under subsection (b)(2) or (b)(3) if the beneficiary of the payment order does not have an account with the receiving bank, ..." Section 4A-209 does not impose duties on the parties, and Section 4A-402 addresses the obligations and rights between parties when a payment order should not have been accepted.

## III. SUMMARY JUDGMENT IS NOT APPROPRIATE UNDER COUNT III BECAUSE IT IS DISPUTED IF HAMLIN HAD PROPER STATUTORY NOTICE

Hamlin's position is that either Count I, under Section 5/4A-303(c), or Count II, under

subsection 207(a), should apply based on how Chase executed its payment order. Count III is pled only as an alternative to Count II depending how the Court decides Count II, and specifically to address the two conditions in subsection 207(c)(2): that the account holder at Truist had no right to payment, and Hamlin did not receive notice to relieve Chase of the loss under subsection 207(b).

The first condition is met because it is undisputed that Hamlin, as the originator, proved that neither Classicplan Premium Financing nor the imposter setting up the mule account was entitled to receive payment from Hamlin. (SOF ¶¶ 39, 46; Mot. Ex. F, Hamlin Dep. 47:1-7; Resp. Ex. 3, Walski Decl. ¶¶ 2-8). Chase must prove Hamlin had prior notice "that payment of a payment order issued by the originator might be made by the beneficiary's bank on the basis of an identifying or bank account number event if it identifies a person different from the named beneficiary" or else take the loss. 810 ILCS 5/4A-207(c)(2). This second condition, notice, is disputed. (SODF ¶ 11).

Chase relies on three facts: 1) Munteanu's acceptance of a "Vendor Services Payment Agreement" in 2009, 2) Munteanu physically signed a Business Signature Card when opening the Hamlin account in 2019, and 3) the declaration by Halie Williams that Chase makes deposit account agreements available to all customers when opening accounts.

Hamlin disputes it had notice because Hamlin is a separate legal entity from Munteanu and Hamlin is not imputed with Munteanu's knowledge of an agreement from 2009 for a non-Hamlin account he received a decade prior to Hamlin's existence; Chase did not provide any account agreement on October 24, 2019; and none of the notices Chase cites give the actual notice required for Chase to avoid taking the loss.

**A. Disputed Facts Preventing Summary Judgment**

i. <u>An account agreement received by Munteanu in 2009 did not provide notice to Hamlin, which was formed as a corporation ten years later in 2019</u>

Chase argues that Hamlin received the Vendor Payment Service Agreement because Munteanu

received it for another account on July 24, 2009. (SOF ¶¶ 33-35, 37). Hamlin contends this is insufficient to impute Munteanu's 2009 knowledge to Hamlin, which was incorporated October 3, 2019. (SODF ¶ 6). A corporation has a separate legal status from its owners. 805 ILCS 5/2.15; *Sabath v. Mansfield*, 377 N.E.2d 161, 169 (Ill. Ct. App. 1978) ("A corporation is an entity distinct from its stockholders, even sole stockholders, and they must be treated as separate legal entities."). Notice to a corporation must be given through someone for whom the corporations' due diligence duties require communicating significant information. See 810 ILCS 5/1-202(e), (f): *Milliken Nat. Bank of Decatur v. Peter Schwabe Corp.*, 531 N.E.2d 1074, 1078-9 (Ill. Ct. App. 1988). The due diligence requirement for "notice" was added to prevent businesses from having to investigate notice of adverse claims before purchasing investment securities. *Id.,* 531 N.E.2d at 1078. Nothing in the record shows that Hamlin's due diligence required Munteanu to communicate a notice he received in 2009 for an unrelated account opened ten years before Hamlin was incorporated.

ii. <u>Hamlin was not given an account agreement when it opened its account October 24, 2019</u>

A fact dispute exists whether Hamlin had notice, despite the signed Business Signature Card on October 24, 2019, because Chase did not deliver what the form signature card states. (SODF ¶¶ 7-9; SOF ¶¶ 54-57). Chase testified the online summary showing the account agreements it contends Hamlin accepted containing the statutory notice does not show Hamlin accepted a deposit account agreement on October 24, 2019. (Mot. Ex. I, under seal at Dkt. 34, Ex B-Chase Dep. 72:13-74:5; Mot. Ex. I, Chase Dep. Ex. 7 at Dkt 34, Ex C-Summary of Account Agreements). The only agreement Chase testified Hamlin accepted containing the statutory notice is the Vendor Payment Service Agreement, which was accepted on December 3, 2009. (*Id*).

iii. <u>The deposit account agreements state other account agreements govern wire transfers</u>

Chase claims the Deposit Account Agreement applies, but Part III disclaims its application

when: 1) it is a business account, 2) the funds transfer is a wire transfer, and 3) another agreement governs. (SODF ¶ 10). Hamlin's is a business account, this was a wire transfer under UCC Section 4A, and Chase asserts the Vendor Payment Service Agreement governs. (SOF ¶¶ 33-38).

iv. The vendor service payment agreement provides legally insufficient notice

The notice in the Vendor Payment Service Agreement is the only one that could apply if received. But it only addresses what Chase could do in case of a mismatch. (SOF ¶ 38). Notice is inadequate on the risk of beneficiary's bank relying solely on the number. *Elkin Valley Baptist Church v. PNC Bank, N.A.*, No. 23-1798, 2024 WL 4150083, at **33-4 (W.D. Pa. Sep. 10, 2024).

In sum, it is unreasonable for Chase to attempt to impute Munteanu's prior knowledge to Hamlin, to rely on agreements with ambiguous cross-references to other potentially governing agreements, to make changes to its agreements without actual notice to Hamlin, and to require Hamlin to search online for the latest version of potentially government agreements. While the law deems a person to know their agreements, this rule should be relaxed where the other party makes obtaining the governing agreement containing a notice unnecessarily difficult, as is the case here.

**B. Truist's Lack of Knowledge of Mismatch would only Protect Truist under 207(b)(1)[3]**

Subsection 207(c) applies to all subsection 207(b)(1) claims and allocates the loss between the sender/originator (Hamlin) and originator's bank (Chase). Whether Truist knew of the mismatch would only serve to protect it from liability, but is not relevant to determine rights between Hamlin and Chase. The two cases Chase cites do not apply to these facts because those senders sued the beneficiary's bank, whereas here, Truist's liability is not an issue. *Sunset Cmty. Health Ctr., Inc. v. Capital One Fin. Corp.*, 652 F. Supp. 3d 1020, 1027 (D. Minn. 2023); *Studco Bldg. Sys. United*

[3] Chase presents this in its Section II.A addressing Count II and subsection 207(a), but Truist's lack of knowledge of mismatch is only relevant to Chase's rights under Count III and subsection 207(b), as against Truist, so is addressed in this Section III.B.

*States, LLC v. 1st Advantage Fed. Credit Union*, 509 F. Supp. 3d 560, 568 (E.D. Va. 2020).

**C. Section 4A-402(c) and (d) apply to determine the Payment Obligation and Refund Rights of Hamlin's Funds Transfer Depending if it Had Notice under 4A-207(c)(2)**

Chase addresses each subsection of Section 4A-402, but Hamlin only pled subsections 402(c) and (d). (Mot. Ex A. Compl. ¶ 53). Chase argues subsection 402(c) fails as a matter of law against a claim under Section 4A-207(b) based on its arguments presented in Part I at pp. 7-9. Those arguments reflect Chase's belief that subsection 402(c) ends its liability at the highlighted portion: "**acceptance of the order by the receiving bank obliges the sender to pay the bank the amount of the sender's order. Payment by the sender is not due until the execution date of the sender's order.**" Mot. at pg. 7; 810 ILCS 5/4A-402(c). In isolation, this suggests that Hamlin was obligated to pay Chase once executed. However, the next sentence excuses sender from payment:

> The obligation of that sender to pay its payment order is excused if the funds transfer is not completed by acceptance by the beneficiary's bank of a payment order instructing payment to the beneficiary of that sender's payment order.

810 ILCS 5/4A-402(c). Hamlin is the sender, and its funds transfer was not completed by acceptance by Truist of a payment order instructing payment to Union Electronic Distributors or UED NEW, the beneficiary of Hamlin's payment order. If Chase omitted the beneficiary in its payment order, then Section 4A-303(c) applies and Hamlin is excused from paying Chase.

If Chase included the beneficiary in its payment order, then either subsection 207(a) or (b) applies. If 207(a) applies, as Hamlin believes it should, then acceptance cannot have occurred and Hamlin is excused from paying Chase. If 207(b) applies, Chase cannot recover from Truist if it did not know of the mismatch. Nevertheless, under subsections 207(b)(1), (c)(2), if Hamlin proves the beneficiary of -7502 was not entitled to any payment from Hamlin, Chase may avoid the loss if it proves Hamlin had notice and the notice was sufficient. 810 ILCS 5/4A-207(c)(2).

Here, Hamlin paid its payment order to Chase. Under any count where Hamlin was not

obligated to pay its payment order, subsection 402(d) provides Hamlin a mechanism for refund. Despite its argument to the contrary, Section 4A-402(d) places no independent duty or obligation on any party. It simply provides the remedy for other UCC Section 4A provisions:

> (d) If the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid, the bank receiving payment is obliged to refund payment to the extent the sender was not obliged to pay.

810 ILCS 5/4A-402(d); *Approved Mortgage Cor*p. at 589-592.

## CONCLUSION

For the foregoing reasons, Hamlin Tec, Inc. respectfully requests this Court deny JPMorgan Chase Bank, N.A.'s Motion and enter an order setting trial on the above disputed matters.

Dated: December 27, 2024

Respectfully submitted,

By: /s/ Steven B. Pollack

Steven B. Pollack
Pollack Law Firm
49 Sherwood Terrace, Suite 49-X
Lake Bluff, IL 60044
Tel: (847) 436-9566
Email: steve@ecoesq.com

*Attorney for Plaintiff Hamlin Tec, Inc.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on December 27, 2024, I caused service of the foregoing **PLAINTIFF HAMLIN TEC, INC'S MEMORANDUM OF LAW OPPOSING JPMORGAN CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT** on all registered parties by electronically filing it with the Clerk of Court through the CM/ECF system.

/s/ Steven B. Pollack