UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HAMLIN TEC, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 23 C 3415 ) ) Judge Sara L. Ellis |
| JPMORGAN CHASE BANK N.A., | ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

On January 19, 2022, an unknown third party contacted Plaintiff Hamlin Tec, Inc. ("Hamlin") and pretended to be one of Hamlin's business vendors. The unknown third party provided Hamlin with bank account information. Bogdan Munteanu, the President and sole owner of Hamlin, went to Defendant JPMorgan Chase Bank N.A. ("Chase") and completed a transfer of over $130,000 to the third party's supplied bank account number. After learning that it had sent money not to its intended vendor but rather to an unknown third party, Hamlin brought the instant case against Chase, alleging that Chase violated multiple portions of the Illinois Uniform Commercial Code ("Illinois UCC"). Now, Chase has moved for summary judgment on all claims against it [38]. Because no issues of material fact exist on any of Hamlin's claims and the law compels judgment for Chase, the Court grants summary judgment for Chase.

**BACKGROUND**[1]

Munteanu is the President and sole owner of Hamlin, an Illinois corporation. On October 24, 2019, Hamlin opened a checking account ending in -3593 (the "-3593 Account") with Chase,

---

[1] The Court derives the facts in this section from admissible and supported portions of the parties' Joint Statement of Undisputed Material Facts and the exhibits attached thereto. The Court also considered Hamlin's statements of disputed fact and Chase's responses to those statements. See Docs. 44; 47.

1

an Ohio entity. As part of opening the -3593 Account, Munteanu signed a Business Signature Card associated with the -3593 Account on behalf of Hamlin. The Business Signature Card stated that:

> By signing this Signature card, the Depositor applies to open a deposit account at JPMorgan Chase Bank, N.A. (the 'Bank'). . . . The Depositor acknowledges receipt of the Bank's Deposit Account Agreement or other applicable account agreement, which include all provisions that apply to this deposit account, . . . and agree[s] to be bound by the terms and conditions therein as amended from time to time.

Doc. 40 ¶ 10. Hamlin is the "Depositor" referred to on the Business Signature Card. *Id.* ¶ 7. Chase makes a copy of the effective Chase Deposit Account Agreement ("DAA") available to every customer with a deposit account online and in branch offices, and Hamlin had a copy of the DAA available to it when it opened the -3593 Account.

From the time Hamlin opened the -3593 Account to January 2022, Chase had multiple effective DAAs. Each DAA contained terms permitting Chase to change the terms of the DAA at any time, subject to providing notice of adverse changes. Further, each DAA also provided:

> If you instruct [Chase] to send a funds transfer, such as a wire or ACH transfer, we and every other bank involved in the transfer may rely on any bank number or account number you provide. If the funds transfer instruction gives both a bank number or account number and a name, and the name identifies a different person from the bank or account owner identified by number, we and other banks that handle the funds transfer may still rely exclusively on the number. We have no duty to detect any inconsistency between the bank number or account number and the name.

*Id.* ¶ 31.

Munteanu connected the -3593 Account with his online Chase profile, allowing him to use Chase's online services for the -3593 Account. Munteanu created his online Chase profile in 2009 and, at that time, accepted Chase's Vendor Payment Service Agreement. Chase's Vendor Payment Service Agreement, which was in effect in January 2022, stated that:

2

> In processing and transmitting Instructions and Entries issued in your name, JPMorgan Chase may rely upon identifying number (e.g. bank routing number or Payee account number) of any bank or Payee identified in the Instructions. The [Receiving Depositor Financial Institution] may credit or debit, as appropriate, the account of the Payee on the basis of an account number, even if it identifies a person different from the Receiver. You assume full responsibility for any inconsistency between name and identifying number of any bank or Receiver in Instructions issued in your name and in Entries processed and transmitted by JPMorgan Chase therefrom.

*Id.* ¶ 38.

Hamlin disputes whether Munteanu ever received any version of the DAA and argues that Munteanu only understood the Business Signature Card to be a tool used to compare signatures to prevent fraud.

On January 19, 2022, Hamlin received an email from an unknown third party, pretending to be one of Hamlin's business vendors, Union Electronic Distributors ("UED"). The email directed Hamlin to send UED's next payment to a new bank account ending in -7502 (the "-7502 Account"). That day, Munteanu logged into his online Chase account and attempted to send funds to the third party pretending to be UED on behalf of Hamlin. In attempting to send the funds to the third party, Munteanu created a new payment profile for UED in the online Chase system by entering the -7502 Account number, routing number, and the account name. Munteanu's first attempt to send funds to the -7502 Account failed because Chase restricted the transaction.

Then, Munteanu visited a Chase bank branch in person, provided his information to Chase employees, confirmed that he was acting on behalf of Hamlin, and affirmed that he wanted to send $133,106.78 from the -3593 Account to UED at the -7502 Account. Chase executed the transfer through the Automated Clearing House ("ACH") system. A Chase spreadsheet contains some of the information from Hamlin's transfer instructions that Chase

3

entered into the ACH system. The Chase spreadsheet states that "Hamlin Tech Inc." was the payee, the transaction amount was $133,106.78, and both the -7502 and -3593 Accounts were involved in the transaction. Doc. 41 at 2. However, Chase does not know if the spreadsheet contains all the information that it entered into the ACH system to execute Hamlin's transfer.

The parties dispute whether Chase entered or omitted to enter UED's name into the ACH system as the beneficiary of the transfer. In addition to Chase's spreadsheet, Hamlin submitted a copy of a Chase for Business webpage that shows the payment profile that Munteanu created for UED with the -7502 Account information. The webpage includes the vendor name "Union Electronic Distributors" with the nickname "UED NEW," and shows a $133,106.78 transfer with the status "paid" on January 20, 2022. Doc. 44-4 at 5–6.

On January 31, 2022, Hamlin learned that UED did not receive the funds that Hamlin had sent to the -7502 Account. At all relevant times, Truist Bank maintained the -7502 Account in the name of "ClassicPlan Premium Financing, Inc." Doc. 40 ¶ 46. Truist Bank does not maintain any account in the name of UED.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed.*

*Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

**I.**     **Illinois UCC Sections 4A-303(c), 4A-305(b), and 4A-402 (Count I)**

The Court grants summary judgment to Chase on Count I of Hamlin's complaint, which alleges that Chase violated sections 4A-303(c), 4-305(b), and 4A-402 of the Illinois UCC (together, "Count I"). First, Section 4A-303(c) of the Illinois UCC provides that:

> (c) If a receiving bank executes the payment order of the sender by issuing a payment order to a beneficiary different from the beneficiary of the sender's order and the funds transfer is completed on the basis of that error, the sender of the payment order that was erroneously executed and all previous senders in the funds transfer are not obliged to pay the payment orders they issued. The issuer of the erroneous order is entitled to recover from the beneficiary of the order the payment received to the extent allowed by the law governing mistake and restitution.

810 Ill. Comp. Stat. 5/4A-303(c). Under this section, it is undisputed that Chase is the receiving bank and Hamlin is the sender. *See* Doc. 39 at 6; Doc. 44 at 5.

5

Hamlin argues that Chase violated Section 4A-303(c) because it did not execute Hamlin's order to the correct beneficiary, UED, even though Chase used the bank account number Munteanu provided Chase. To support this argument, Hamlin asserts that Chase did not include the beneficiary's name, UED, in the payment order it executed, such that the beneficiary's bank, Truist Bank, could have stopped the transaction because the owner of the -7502 Account was not UED. Hamlin acknowledges that the Illinois UCC does not obligate Truist Bank to verify whether the name on the payment order matches the account number, but Hamlin argues that Chase's failure to include UED's name in the payment order violated the terms of Section 4A-303(c) and entirely prevented Truist Bank from stopping the transaction, if it had chosen to take steps to detect the discrepancy. Hamlin argues that Section 4A-402 entitles it to a refund from Chase of the amount it sent to the -7502 Account at Truist Bank, if its claims under Sections 4A-303(c) succeeds.

Chase, on the other hand, argues that no issues of material fact exist and that Hamlin's claims in Count I fail as a matter of law. Chase argues that it is undisputed that it sent the funds Hamlin directed Chase to send to the bank account number Hamlin provided, and it is not material whether Chase included UED's name in the payment order because omitting the beneficiary's name from the payment order is not the same as directing payment to a different beneficiary. In support of its motion, Chase cites to *United States v. PNC Bank*, one of the few cases to address section 4A-303(c) of the UCC. 2009 WL 10736701, at *4 (E.D. Pa. Mar. 31, 2009). In *PNC Bank*, the plaintiff alleged that the defendant bank wired the plaintiff's funds to the wrong account belonging to a third party, rather than the intended account belonging to the third party. *See id.* at 2–4. The court found, after reviewing the evidence in the record, that "the defendant bank "followed Plaintiff's instructions and accordingly, did not violate §§ 4A-

302(a)(1) or 4A-303(c)." *Id.* at *4. Specifically, the plaintiff had expressly instructed the defendant bank to send the funds to a certain bank account number at a different bank, with instructions that the funds were "for further credit to" the third party at a different account number. *Id.* at *4. The plaintiff had intended that the bank that received the transfer from the defendant bank would, in turn, transfer the funds into the ultimate bank account of the third party. *Id.* However, after the defendant bank sent the funds to the bank and account number plaintiff had instructed the defendant bank to send the funds, the bank that received the funds from the defendant bank did not send the funds on to the account that the plaintiff had intended. *Id.* at *5. The court found that the defendant bank acted in accordance with the plaintiff's directions and granted summary judgment to the defendant bank. *Id.*

  The Court begins by finding that Chase did not violate Section 4A-303(c) by sending the funds that Hamlin directed Chase to send to the account number that Hamlin provided, even if Chase did not include UED's name in the payment order. The undisputed evidence supports that Chase did not execute Hamlin's payment order to a beneficiary different from the beneficiary of the sender's order. Specifically, the Illinois UCC defines a "beneficiary" as "the person to be paid by the beneficiary's bank." 810 Ill. Comp. Stat. 5/4A-103(a)(2). The evidence does not support that Chase took any action to send Hamlin's payment to any person other than the person Hamlin identified because Chase had no way of knowing that the name Hamlin provided with the account number was not accurate, and Chase sent the funds to the account number Hamlin provided. *See Cmty. Bank, FSB v. Stevens Fin. Corp.*, 966 F. Supp. 775, 788 (N.D. Ind. 1997) ("As a general rule, an order is an order to the receiving bank, and if it follows the order, the bank is free and clear. If it receives an order that is erroneous because the sender intended something else, there will usually be no way for the receiving bank to know that someone not

intended by the sender is receiving the money." (citation omitted)); *PNC Bank,* 2009 WL 10736701, at *4–5. Section 4A-303(c) contemplates liability for receiving banks when those banks commit an error, such as including an account number or name different than the information provided by the sender; however, it is undisputed that Chase did not commit any such error here. *See* 810 Ill. Comp. Stat. 5/4A-303, cmt. 4 (describing a scenario where a bank erroneously sends funds to a bank account number that is different from the bank account number the originator instructed the bank to send the funds to as an example of when section 4A-303(c) would apply). Hamlin has not identified and the Court has not been able to locate any legal authority that required Chase to include the beneficiary's name in the payment order, and it therefore was not an error for Chase to omit the beneficiary's name from the payment order. In short, section 4A-303(c) does not support Hamlin's argument that a receiving bank violates the section by merely omitting the beneficiary's name from a payment order but including the correct account number provided by a sender.

Next, the Court finds that Hamlin's section 4A-402 claim fails as well. Section 5/4A-402 provides in relevant part that:

> (c) This subsection is subject to subsection (e) and to Section 4A-303. With respect to a payment order issued to a receiving bank other than the beneficiary's bank, acceptance of the order by the receiving bank obliges the sender to pay the bank the amount of the sender's order. Payment by the sender is not due until the execution date of the sender's order. The obligation of that sender to pay its payment order is excused if the funds transfer is not completed by acceptance by the beneficiary's bank of a payment order instructing payment to the beneficiary of that sender's payment order.
>
> (d) If the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid, the bank receiving payment is obliged to refund payment to the extent the sender was not obliged to pay. Except as provided in Sections 4A-204 and 4A-

8

> 304, interest is payable on the refundable amount from the date of payment.
>
> (e) If a funds transfer is not completed as stated in subsection (c) and an intermediary bank is obliged to refund payment as stated in subsection (d) but is unable to do so because not permitted by applicable law or because the bank suspends payments, a sender in the funds transfer that executed a payment order in compliance with an instruction, as stated in Section 4A-302(a)(1), to route the funds transfer through that intermediary bank is entitled to receive or retain payment from the sender of the payment order that it accepted. The first sender in the funds transfer that issued an instruction requiring routing through that intermediary bank is subrogated to the right of the bank that paid the intermediary bank to refund as stated in subsection (d).
>
> (f) The right of the sender of a payment order to be excused from the obligation to pay the order as stated in subsection (c) or to receive refund under subsection (d) may not be varied by agreement.

810 Ill. Comp. Stat. 5/4A-402. Hamlin does not argue that its section 4A-402 claim is an independent claim, rather it argues that "if either Section 4A-303(c) or 4A-207 applies, then it is Section 4A-402(d) that allows Hamlin to obtain a refund from Chase." Doc. 44 at 7. The Court accepts, without deciding, Hamlin's assertions that a plaintiff can use section 4A-402's refund obligation as recourse against the receiving bank for violations of sections 4A-303(c) and 4A-207. *See Approved Mortg. Co. v. Truist Bank*, 106 F.4th 582, 589 (7th Cir. 2024) (examining similar provisions in the Indiana UCC and finding that section 402 is the remedy for a sender if a bank violates section 207). Despite this, Hamlin's section 4A-402 claim fails because Hamlin's section 4A-303(c) claim fails.

Finally, the Court finds that Hamlin's section 4A-305(b) claim fails as a matter of law. Section 4A-305(b) states that:

> (b) If execution of a payment order by a receiving bank in breach of Section 4A-302 results in (i) noncompletion of the funds transfer, (ii) failure to use an intermediary bank designated by the

9

> originator, or (iii) issuance of a payment order that does not comply with the terms of the payment order of the originator, the bank is liable to the originator for its expenses in the funds transfer and for incidental expenses and interest losses, to the extent not covered by subsection (a), resulting from the improper execution. Except as provided in subsection (c), additional damages are not recoverable.

810 Ill. Comp. Stat. 5/4A-305(b). Neither party makes any efforts to expressly develop arguments as to why the section 4A-305(b) claim should or should not succeed, beyond Chase's general assertion that it "is entitled to summary judgment" on the section 4A-305(b) claim.[2] *See* Doc. 39 at 6. Nonetheless, the Court looks to Chase's arguments to see if they have properly shown that summary judgment is proper. *See Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) ("Even where a nonmovant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment [is] proper given the undisputed facts.'"). Section 4A-305(b) only applies where the receiving bank breached section 4A-302, which provides:

> Obligations of receiving bank in execution of payment order.
>
> (a) Except as provided in subsections (b) through (d), if the receiving bank accepts a payment order pursuant to Section 4A-209(a), the bank has the following obligations in executing the order:
>
> (1) The receiving bank is obliged to issue, on the execution date, a payment order complying with the sender's order and to follow the sender's instructions concerning (i) any intermediary bank or funds transfer system to be used in carrying out the funds transfer, or (ii) the means by which payment orders are to be transmitted in the funds transfer. If the originator's bank issues a payment order to an intermediary bank, the originator's bank is obliged to instruct the intermediary bank according to the instruction of the originator. An intermediary bank in the funds transfer is similarly bound by an

---

[2] The Court questions whether Hamlin even asserts a stand-alone section 4A-305(b) claim or whether, similar to Hamlin's section 4A-402 claims, Hamlin uses section 4A-305(b) as another vehicle to seek relief for Chase's alleged section 4A-303(c) violation.

instruction given to it by the sender of the payment order it accepts.

(2) If the sender's instruction states that the funds transfer is to be carried out telephonically or by wire transfer or otherwise indicates that the funds transfer is to be carried out by the most expeditious means, the receiving bank is obliged to transmit its payment order by the most expeditious available means, and to instruct any intermediary bank accordingly. If a sender's instruction states a payment date, the receiving bank is obliged to transmit its payment order at a time and by means reasonably necessary to allow payment to the beneficiary on the payment date or as soon thereafter as is feasible.

(b) Unless otherwise instructed, a receiving bank executing a payment order may (i) use any funds transfer system if use of that system is reasonable in the circumstances, and (ii) issue a payment order to the beneficiary's bank or to an intermediary bank through which a payment order conforming to the sender's order can expeditiously be issued to the beneficiary's bank if the receiving bank exercises ordinary care in the selection of the intermediary bank. A receiving bank is not required to follow an instruction of the sender designating a funds transfer system to be used in carrying out the funds transfer if the receiving bank, in good faith, determines that it is not feasible to follow the instruction or that following the instruction would unduly delay completion of the funds transfer.

(c) Unless subsection (a)(2) applies or the receiving bank is otherwise instructed, the bank may execute a payment order by transmitting its payment order by first class mail or by any means reasonable in the circumstances. If the receiving bank is instructed to execute the sender's order by transmitting its payment order by a particular means, the receiving bank may issue its payment order by the means stated or by any means as expeditious as the means stated.

(d) Unless instructed by the sender, (i) the receiving bank may not obtain payment of its charges for services and expenses in connection with the execution of the sender's order by issuing a payment order in an amount equal to the amount of the sender's order less the amount of the charges, and (ii) may not instruct a subsequent receiving bank to obtain payment of its charges in the same manner.

11

810 Ill. Comp. Stat. 5/4A-302. As is relevant here, a receiving bank violates section 4A-302 if it fails to follow the sender's instructions concerning a payment order. The parties do develop arguments related to this issue, although they frame these arguments in relation to other Illinois UCC sections. Here, Hamlin has not alleged that it directed or instructed Chase to include UED's name in the ACH transfer. Rather, accepting Hamlin's alleged facts, Hamlin merely included UED's name in the transfer information and then Chase omitted UED's name from the ACH transfer. No operative direction or instruction required Chase to include UED's name on the ACH transfer. Because Hamlin has not created an issue of material fact as to whether Chase failed to follow its instructions, Hamlin cannot maintain a section 4A-302 claim and, as a result, cannot obtain any recovery under section 4A-305(b).

Because Hamlin's claims in Count I fail, the Court grants summary judgment to Chase on Count I.

## II.    Illinois UCC Sections 4A-207(a) and 4A-209(c) (Count II) & Sections 4A-207(b) and 4A-402 (Count III)

Next, the Court turns to Hamlin's Counts II and III, which allege that Chase violated sections 4A-207(a) and 4A-209(c) of the Illinois UCC, or, in the alternative, Chase violated sections 4A-207(b) and 4A-402. In relevant part, Section 4A-207 provides that:

> (a) Subject to subsection (b), if, in a payment order received by the beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur.
>
> (b) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
>
> (1) Except as otherwise provided in subsection (c), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper

12

> identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.
>
> (2) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.
>
> (c) If (i) a payment order described in subsection (b) is accepted, (ii) the originator's payment order described the beneficiary inconsistently by name and number, and (iii) the beneficiary's bank pays the person identified by number as permitted by subsection (b)(1), the following rules apply:
>
> (1) If the originator is a bank, the originator is obligated to pay its order.
>
> (2) If the originator is not a bank and proves that the person identified by number was not entitled to receive payment from the originator, the originator is not obliged to pay its order unless the originator's bank proves that the originator, before acceptance of the originator's order, had notice that payment of a payment order issued by the originator might be made by the beneficiary's bank on the basis of an identifying or bank account number even if it identifies a person different from the named beneficiary. Proof of notice may be made by any admissible evidence. The originator's bank satisfies the burden of proof if it proves that the originator, before the payment order was accepted, signed a record stating the information to which the notice relates.

810 Ill. Comp. Stat. 5/4A-207(a)–(c). Section 4A-209(c) states that:

> (c) Acceptance of a payment order cannot occur before the order is received by the receiving bank. Acceptance does not occur under subsection (b)(2) or (b)(3) if the beneficiary of the payment order does not have an account with the receiving bank, the account has been closed, or the receiving bank is not permitted by law to receive credits for the beneficiary's account.

810 Ill. Comp. Stat. 5/4A-209(c).

A.  **Section 4A-207 Claims**

Hamlin's section 4A-207(a) and 4A-207(b) claims both fail because section 4A-207 did not require Truist Bank to reject Hamlin's payment order. First, as discussed above, the Court accepts without deciding that a sender of a payment order can bring a claim against the receiving bank, using section 4A-402, when the beneficiary's bank improperly accepts a payment order under section 4A-207. *See Approved Mortg. Co.*, 106 F.4th at 589. The Court notes that Hamlin argues that Chase omitted naming UED as the beneficiary in the ACH system, which is the manner in which Chase executed the payment order. Under this factual assertion, Hamlin's 4A-207 claims fail because Truist Bank would not have received a payment order that referred to a nonexistent or unknown individual. Rather, Truist Bank would have only received a payment order referring to an existing account, the -7502 Account. *See, e.g.*, 810 Ill. Comp. Stat. 5/4A-207(a) ("Subject to subsection (b), if, in a payment order received by the beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur.").

Additionally, even assuming that Chase did include UED's name on the payment order, section 4A-207 does not entitle Hamlin to relief because Chase gave Hamlin notice that it would rely on bank account numbers in processing payment orders. Section 207(a) is subject to subsection (b), which in turn, is subject to subsection (c).

Here, under section 4A-207(b), Truist Bank had no obligation to determine whether the name and account number on the payment order matched before it accepted the payment order, and it could accept the payment order in reliance on the account number if it was not aware of the discrepancy. For section 4A-207(b) to require Truist Bank to reject the payment order, Truist

14

Bank would have needed to possess "actual knowledge of the mismatch" between the name of the beneficiary on the payment order and the account number. *See GN Pro Grp., LLC v. Well Done ASAP, LLC*, No. 23-cv-16711, 2025 WL 327927, at *3 (N.D. Ill. Jan. 29, 2025) (quoting *Sunset Cmty. Health Ctr., Inc. v. Cap. One Fin. Corp.*, 652 F. Supp. 3d 1020, 1027 (D. Minn. 2023)). "[A]ctual knowledge is not established simply from the fact of the mismatch." *Id.* (citing *Langston & Langston, PLLC v. SunTrust Bank*, 480 F. Supp. 3d 737, 744 (S.D. Miss. 2020)). Hamlin has not presented any evidence to suggest that Truist Bank possessed actual knowledge, at the time it accepted the transfer to the -7502 Account, that the beneficiary's name on the payment order did not match the name on the account. Any such requested inference amounts to mere speculation. *See White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) ("We give [the nonmoving party] the benefit of reasonable inferences from the evidence, but not speculative inferences in his favor." (citations omitted)). Therefore, no reasonable juror could find that Truist Bank knew that the name on the payment order did not refer to the owner of the -7502 Account. Thus, section 4A-207(b)(1) applies to this transaction and permitted Truist Bank to accept the payment order.

Because Truist Bank accepted the payment order to the -7502 Account under section 4A-207(b)(1) and the payment order may have described the beneficiary inconsistently by name and account number, section 4A-207(c) applies. Specifically, section 4A-207(c)(2) applies because Hamlin was the "originator," in other words, the sender of the payment order. *See* 810 Ill. Comp. Stat. 5/4A-104(d) (defining "originator"); 810 Ill. Comp. Stat. 5/4A-103(a)(5) (defining "sender"). Under section 4A-207(c)(2), Hamlin is not obligated to pay its payment order unless Chase proves that it provided Hamlin with notice, before the acceptance of Hamlin's payment order, that Chase and the beneficiary's bank might pay the payment order in reliance on the

15

account number, even if the payment order named a different person than the owner of the account number. The Court finds that Chase has made that showing here. The parties do not dispute that Munteanu, on behalf of Hamlin, signed a Business Signature Card for the -3593 Account that stated that he had received a copy of the DAA and agreed to be bound by the DAA. The DAAs each contained a provision expressly stating that Chase and other banks might rely on the account number provided for a transfer, even if that account number did not match the name on the account. Courts have previously found that "[w]hen a depositor signs signature cards in which they acknowledge receipt of a DAA, that is sufficient to demonstrate the depositor's assent to the DAA" and that "[a] party who has signed a contract is charged with knowledge of and assent to its terms." *DriverDo LLC v. JP Morgan Chase Bank, N.A.*, No. 20 C 5046, 2022 WL 3645909, at *4 (N.D. Ill. Aug. 24, 2022) (citing *Sha-Poppin Gourmet Popcorn LLC v. JP Morgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 457 (N.D. Ill. 2021); *Arbogast v. Chi. Cubs Baseball Club*, 2021 IL App (1st) 210526, ¶ 21). Because Chase gave Hamlin adequate notice that it and other banks would rely on the account number, section 4A-207(c)(2) required Hamlin to pay the payment order.

Hamlin, however, argues that sections 4A-207(b) and (c) do not apply to this case because section 4A-207(a) states that banks should not accept payment orders referring to nonexistent or unidentifiable persons, and UED was unidentifiable to Truist Bank. Hamlin's argument misinterprets the structure of 4A-207. Section 4A-207(a) operates "[s]ubject to subsection (b)." *See* 810 Ill. Comp. Stat. 5/4A-207(a). "The phrase 'subject to' means 'governed by' or 'subordinate to.'" *Teague v. Healthcare Dev. Partners, LLC*, No. 18 C 601, 2019 WL 3973372, at *5 (N.D. Ill. Aug. 22, 2019) (accumulating cases). Based on the plain language of section 4A-207, subsections (b) and (c) expand on and provide limitations to the

16

more general principle stated in subsection (a). Courts apply subsections (b) and (c) in circumstances like this case because the more specific terms of subsection (b) and (c) govern when a payment order contains both a name and account number, and a mismatch between them. *See GN Pro Grp., LLC*, 2025 WL 327927, at *2–3 (finding that section 4A-207(c)(2) applied in a case where a plaintiff sent funds to a fraudster, using the correct beneficiary's name but the fraudster's account number). In short, section 4A-207(a) does not apply to the undisputed facts of this case, and Hamlin's claim based on 4A-207(a) must therefore fail as a matter of law.

Hamlin also argues that the Court should not give any weight to the notice that Chase provided Hamlin that banks would rely on the account number, even in the event of a discrepancy, because "applying an agreement to a payment order under Section 207(a) improperly alters Hamlin's right to a refund under section 402(c) and 402(d)." Doc. 44 at 10. Again, Hamlin's arguments about the Illinois UCC ignore its plain terms and structure. While section 4A-402 does state that "[t]he right of the sender of a payment order to be excused from the obligation to pay the order as stated in subsection (c) or to receive refund under subsection (d) may not be varied by agreement," it also states that "[t]his Section is subject to Sections 4A-205 and 4A-207." 810 Ill. Comp. Stat. 5/4A-402. This language means that the terms of section 4A-402 are governed by or subordinate to the terms of section 4A-207, and, as a result, the terms of 4A-207 that dictate that if Hamlin had written notice that Chase and other banks might rely on an account number, even if the name of the beneficiary does not match the account number, Hamlin must pay its payment order. *See* 4A-207(c)(2). Therefore, because section 4A-207 does not entitle Hamlin to any refund, Hamlin cannot collect a refund by relying on 4A-402 to enforce 4A-207.

To summarize, the Court finds that both of Hamlin's section 4A-207 claims fail, and Hamlin's section 4A-402 claim that relies on the section 4A-207(b) claim also fails. If Chase omitted UED's name from the payment order, no section of 4A-207 applies because the payment order would have only referred to an account number that existed at Truist Bank with no indication of a misdescription of a beneficiary. If Chase included UED's name in the payment order, Hamlin's claims would still fail because the case would fall under 4A-207(b)(1) and 4A-207(c)(2). Section 4A-207(b)(1) permitted Truist Bank to accept the payment order given that no evidence exists in the record that Truist Bank knew that the name and account number referred to different people. Further, section 4A-207(c)(2) would require Hamlin to pay the payment order to Chase because Chase provided notice to Hamlin that banks might rely upon bank account numbers, even when they did not match the account names.[3] *See* 810 Ill. Comp. Stat. 5/4A-207(c)(2).

### B. Section 4A-209(c) Claim

Next, the Court turns to Hamlin's section 4A-209(c) claim. Section 4A-209 describes when receiving banks and beneficiary banks accept a payment order. 810 Ill. Comp. Stat. 5/4A-209; *see Inskeep v. Griffin*, No. 05 C 1834, 2008 WL 192322, at *12 (N.D. Ill. Jan. 23, 2008) ("Section 209(b) is the U.C.C. provision that establishes when a beneficiary bank has accepted a payment order."). Acceptance is a term of art under the Illinois UCC that determines certain other rights and responsibilities. *See, e.g.*, 810 Ill. Comp. Stat. 5/4A-105 (stating that "acceptance" is a definition applicable to the entire article in the Illinois UCC and that it is defined in section 4A-209). Section 4A-209(c) applies to beneficiary banks as additional guidance regarding the previous subsection, section 4A-209(b). In summary, section 4A-209(b)

---

[3] The Court notes that section 4A-207(d) permits someone in Hamlin's position to recover from the person who wrongfully received the proceeds of the payment order. *See* 810 Ill. Comp. Stat. 5/4A-207(d)(1).

states that a beneficiary's bank accepts a payment order at the earliest of three possible times: (1) when the beneficiary bank pays the beneficiary or notifies the beneficiary of the receipt of the order and credits the beneficiary; (2) when the bank receives payment of the entire amount of the sender's order; or (3) the opening of the next funds transfer business day of the bank following the payment date of the order if the amount of the sender's order is covered by a withdrawable credit in an authorized account. Subsection (c) specifies that acceptance does not occur under conditions (2) or (3) of subsection (b) if the beneficiary of the payment does not have an account with the receiving bank.

Chase argues Hamlin's claim must fail as a matter of law because section 4A-209(c) only creates obligations for the beneficiary's bank, which is Truist Bank, and not Chase. Hamlin responds that section 4A-402 makes violations of section 4A-209(c) by the beneficiary bank actionable against the receiving bank. The Court does not need to resolve these arguments because the parties do not dispute that Hamlin actually transferred $133,106.78 to the -7502 Account, and thus, section 4A-209(b)(1) governs acceptance. Hamlin failed to develop any argument as to why or how section 4A-209(c) applies in the circumstances of this case and the Court is not under any obligation to make arguments for Hamlin. *See, e.g.*, *Sapia v. Bd. of Educ.*, 329 F.R.D. 585, 587 (N.D. Ill. 2019) ("Courts do not sit to make arguments for a party that the party, itself, did not make." (citing *Sanchez v. City of Chicago*, 700 F.3d 919, 934 (7th Cir. 2012))). Because section 4A-209(b)(1) governs acceptance, section 4A-209(c) has no application in this case, and Hamlin's claim fails as a matter of law.

In sum, the Court grants summary judgment to Chase on Count II of Hamlin's complaint because Hamlin's claims under sections 4A-207(a) and 4A-209(c) fail and no issues of material

fact remain.  Further, the Court grants summary judgment on Count III of Hamlin's complaint because its section 4a-207(b) and 4A-402 claims also fail as a matter of law.

## CONCLUSION

For the reasons stated above, the Court grants Chase's motion for summary judgment [38].  The Court enters judgment for Chase on Hamlin's complaint and terminates this case.

Dated: May 28, 2025

SARA L. ELLIS
United States District Judge